# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 14, 2015

Lyle W. Cayce
Clerk

No. 13-10960

ROGER DALE TRENT; VICKIE DARLENE TRENT; RICHARD DALE TRENT; RANDAL DEAN TRENT,

Plaintiffs – Appellees,

v.

STEVEN WADE; MATHEW WALLING,

Defendants – Appellants.

Appeal from the United States District Court
for the Northern District of Texas

ON PETITION FOR REHEARING EN BANC

Before DAVIS, ELROD, and COSTA, Circuit Judges.

PER CURIAM:

The Court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor, rehearing en banc is DENIED. In the en banc poll, 5 judges voted in favor of rehearing (Judges Jones, Smith, Clement, Owen, and Graves), and 10 judges voted against rehearing (Chief Judge Stewart and Judges Jolly, Davis, Dennis, Prado, Elrod, Southwick, Haynes, Higginson, and Costa). Upon the filing of this order, the Clerk shall issue the mandate forthwith. *See* Fed. R. App. P. 41(b).

JENNIFER WALKER ELROD, Circuit Judge, concurring:

I write to address the opinion dissenting from denial of rehearing, which proceeds on the incorrect premise that the panel opinion created a new constitutional rule. From reading the dissent, one might even think the panel opinion created the knock-and-announce requirement itself. To the contrary, of course, the knock-and-announce requirement has existed for many, many years. It was Officer Wade who sought the creation of a new, *per se* exception to the knock-and-announce requirement. The panel merely declined that invitation and affirmed the district court's determination that material fact issues preclude summary judgment.

In *Richards v. Wisconsin*, 520 U.S. 385 (1997), the Supreme Court held that police officers entering a dwelling must knock on the door and announce their identity before entering, unless they "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394. At the summary judgment stage of this case, the district court ruled that fact issues precluded summary judgment on the question of whether Officer Wade had reasonable suspicion that knocking and announcing his presence was dangerous or futile, or that it would inhibit effective investigation of a crime. The district court therefore denied Officer Wade summary judgment on qualified immunity grounds, stating that "there is a fact issue that Wade did not have a reasonable suspicion of activity that otherwise would negate the need to knock and announce his presence prior to entry."[1]

---

[1] Officer Wade entered the house without knocking or announcing twice—he initially entered the house and stood inside the threshold for approximately ninety seconds; he then exited, met with backup officers, and re-entered, again without knocking or announcing his identity or purpose.

No. 13-10960

In an effort to avoid the district court's determination that fact issues precluded summary judgment, Officer Wade asked the panel to create a new, *per se* exception to the knock-and-announce rule that would eliminate the knock-and-announce requirement for officers who are in "hot pursuit" of a suspect. Although "hot pursuit" is an exception to the warrant requirement, neither the Supreme Court nor our court has recognized it as an exception to the knock-and-announce rule. The panel declined to create this new, *per se*, "hot pursuit" exception, *see* Panel Op. at 17–18, reasoning that "hot pursuit" does not *always* make knocking and announcing "futile," because other occupants in a house also are protected by the rule, *id.* at 11–16.[2] The panel therefore held that Officer Wade's "hot pursuit" did not automatically excuse him from the requirements of the knock-and-announce rule. *Id.* at 18–19.

Officer Wade then argued that even if he violated the law, he did not violate "clearly established" law because no Supreme Court case clearly establishes that "hot pursuit" is *not* an exception to the knock-and-announce rule. That is not the correct framework for the analysis. When a party proposes a new exception to a constitutional rule, we do not ask whether the non-existence of that exception has been clearly established. Instead, we ask whether the constitutional rule itself is clearly established. Any other approach would allow officers to obtain qualified immunity in every single case simply by proposing a novel exception to the knock-and-announce rule and

[2] The knock-and-announce rule "serves a number of most worthwhile purposes: (i) decreasing the potential for violence; (ii) protection of privacy; and (iii) preventing the physical destruction of property." Wayne R. LaFave, 2 Search & Seizure § 4.8(a) (5th ed.). Even when an officer is in hot pursuit of a suspect, knocking and announcing decreases the possibility that other residents of the house respond violently to an unannounced entry; knocking and announcing protects the privacy of the other residents; and knocking and announcing prevents officers from breaking down a house's front door when another resident might have opened it voluntarily. Accordingly, the panel declined to hold that, as a matter of law, officers *always* can enter without knocking and announcing just because they are pursuing one of the residents of a house.

3

then pointing out that the novel exception had never before been rejected. *See* Panel Op. at 20 n.12.

The panel's approach was the same as the Supreme Court's in *Groh v. Ramirez*, 540 U.S. 551 (2004). In *Groh,* the officer argued that the Court should create a new exception to the particularity requirement: "Petitioner asks us to hold that a search conducted pursuant to a warrant lacking particularity should be exempt from the presumption of unreasonableness if the goals served by the particularity requirement are otherwise satisfied." *Id.* at 560. The Supreme Court declined to create this new exception and then held that the particularity requirement (*i.e.* the constitutional rule) was clearly established, even though the Court had not previously addressed the petitioner's proposed exception thereto. The Court explained:

> No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional. . . . [P]etitioner is asking us, in effect, to craft a new exception. Absent any support for such an exception in our cases, he cannot reasonably have relied on an expectation that we would do so.

*Id.* at 564–65.[3]

Like the officer in *Groh*, Officer Wade asked the panel to create a new exception to the knock-and-announce rule. Like the Court in *Groh*, the panel did not create the exception. Further, as in *Groh*, the panel held that no reasonable officer would be unaware of the constitutional rule that a no-knock entry is unconstitutional unless the officer has reasonable suspicion that

---

[3] In light of *Groh*, the dissent's reliance on *Carroll v. Carman*, 135 S. Ct. 348 (2014) (per curiam), is misplaced. In that case, the Third Circuit improperly held the officer to a *narrow* conception of a rule that had never before been interpreted so narrowly. In our case, Wade presses an *expansive* construction of the futility exception, which has never been interpreted so broadly. Officer Carroll was entitled to rely on the rule as it stood; Officer Wade was not entitled to rely on an expectation that the rule would expand to encompass his conduct. *See Groh*, 540 U.S. at 565.

knocking and announcing would be futile or dangerous or could jeopardize evidence. *See* Panel Op. at 20–21. Because the district court ruled that fact issues precluded a finding that any of those exceptions applied, and because the panel lacked jurisdiction on interlocutory appeal to review that conclusion, the panel held that Officer Wade was not entitled to summary judgment.

The dissent misunderstands the panel opinion. The dissent insists that the panel opinion created a new rule, which the dissent describes as requiring that an officer have "a reasonable suspicion of futility as to all occupants before making a no-knock entry." This surely is the rule, but it is not one of the panel's creation; rather, this rule has existed for quite some time. *See generally Wilson v. Arkansas*, 514 U.S. 927, 931–36 (1995) (describing the common law background of the knock-and-announce rule). The dissent fixates on the phrase "all occupants," as if the panel opinion's recognition that more than one person can live in a house was some sort of revelation. But alerting the residents of a house to your presence is not "futile" just because one of those residents already knows you are there—the other residents are also protected by the knock-and-announce requirement and may be willing to answer the door. The soundness of this principle is nowhere more evident than in this case, where, according to the plaintiffs, Officer Wade knew he was chasing a suspect into the suspect's parents' house, at a time when the parents likely were asleep.

The dissent's expressed concern about "[t]he public safety consequences of this holding for the hapless officer and the residential occupants" is misplaced at best. As noted above, the knock-and-announce rule has a separate exception that applies when knocking and announcing might create danger to the officers or the occupants of the house. *See, e.g., Richards*, 520 U.S. at 394. In this case, however, Officer Wade "declined to present evidence that spoliation or public danger were legitimate concerns."

5

Simply put, neither the Supreme Court nor this court has recognized a *per se* "hot pursuit" exception to the knock-and-announce rule, and fact issues precluded the district court from deciding that Officer Wade had reasonable suspicion that knocking and announcing would have been futile under the circumstances of this case. Moreover, the knock-and-announce rule and its pre-existing exceptions are clearly established in the law, such that—on plaintiffs' version of the facts—a reasonable officer would have known that he could not enter the plaintiffs' house without knocking and announcing. Accordingly, the panel agreed with the district court that fact issues precluded summary judgment, and this court correctly denied the petition for *en banc* rehearing.

JONES, Circuit Judge, joined by SMITH, CLEMENT and OWEN, dissenting:

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986). Too often recently, panels of this court have strayed from the Supreme Court's longstanding reaffirmation of this principle in order to pursue their independent vision of sound policy or just to "let a jury decide" if a public official's conduct has gone too far. *See, e.g.*, *Luna v Mullenix*, 777 F.3d 221 (5th Cir. 2014) (Jolly, J., dissenting from denial of rehearing en banc). But an official's negligence and mistakes of judgment are shielded not only from liability but also the cost and humiliation of lawsuits. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.") Thus, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080. The law must be so clear that "every reasonable officer" would have known that what he is accused of doing is a violation. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). The panel here articulated a new, rigid Fourth Amendment rule in order to measure the materiality of the fact issue, which it then failed to apply at the proper level of generality to Officer Wade's actions. The panel's ruling, in effect, says to law enforcement officers that if they pursue a fleeing suspect into a home where other people may be present, the officers must knock before entry or be sued. Because this holding is most mischievous in cases where the public safety is at risk, we should have reconsidered it en banc.

In this case, Officer Wade chased "a kid on an ATV,"[1] who had fled a traffic stop, across an open field in the deep of night to a house Wade knew was the Trents' home. The suspect dismounted his ATV and ran into the house. There is no evidence to indicate that Wade knew the young man was the Trents' son until some point after he had entered their home. The Trents do not dispute that fleeing arrest is a felony offense. The officer had chased the "kid" at some personal risk across the unpaved field and believed this unknown person could have posed a danger to the occupants of the house. The officer reasonably called for backup assistance.

Under the Fourth Amendment, officers must ordinarily knock and announce their presence and authority before entering a private residence. *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S. Ct 1914, 1918 (1995). Had the suspect lived in the house alone, however, the officer's hot pursuit into the entryway would have been clearly constitutional. *United States v. Santana*, 427 U.S. 38, 43, 96 S. Ct 2406, 2410 (1976) (holding that warrantless arrests remain proper even after a suspect escapes from a public place into a private place); *Wilson v. Arkansas*, 514 U.S. at 936, 115 S. Ct. at 1919 (recognizing that the common law already allowed officers to dispense with announcement when the individual escapes from custody into his dwelling). An unannounced entry into an individual's home is justified if the police reasonably suspect that, under the circumstances, knocking and announcing their presence would (1) be dangerous or futile, or (2) inhibit effective investigation of the crime. *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S. Ct. 1416, 1421 (1997).

The panel opinion first concludes, after four pages of analysis, that the futility justification for a warrantless entry is necessarily limited. According

---

[1] The Trents' brief admits only that the officer was familiar with Roger Trent, the father, and Randal, another son.

to the panel, the knock and announce rule "contemplates that *all of the occupants of a home* possess the same constitutional rights . . . to be free from no-knock entries . . . . 'Futility' therefore justifies a no-knock entry only when the officer has a reasonable suspicion that the *occupants* of the residence to be searched are already aware of the officer's presence." 776 F.3d at 381 (first emphasis added;  second emphasis in original).  Consequently, the panel holds that "[a]ny reasonable officer would understand that, because the knock-and-announce rule serves to alert the *occupants* of a home of an impending lawful intrusion, the futility justification requires reasonable suspicion that the *occupants* of the home to be searched are already aware of the officer's presence." 776 F.3d 368, 383 (5th Cir. 2015) (emphasis added).

The upshot of this holding, practically speaking, is to require an officer who is pursuing a felony suspect to evaluate, on the spot, whether the dwelling could accommodate other inhabitants at that time and whether all of those people must be warned by shout or knock before the officer attempts to enter. The public safety consequences of this holding for the hapless officer and the residential occupants seem obviously adverse. Buried in a footnote, the panel seems to worry that "[f]or example, when an armed and dangerous suspect flees into his house in a hot pursuit, stopping to knock and announce might be a dangerous course of action for the officer." 776 F.3d at 382 n.11. But the corresponding text of the opinion, at odds with this footnote, allows for no latitude in the officer's judgment: "Hot pursuit . . . does not have any bearing on the constitutionality of the manner in which [the officer] enters the home." *Id*. To be sure, a man's home is his castle vis a vis unannounced official intrusion, but just as surely, the "greatest intrusion, that of the fleeing felon

9

into the home, already has occurred." *Ingram v. City of Columbus*, 185 F.3d 579, 599 (6th Cir. 1999)(Kennedy, J., dissenting).[2]

Contrary to the panel's novel and rigid rule—allowing a no-knock entry into a private home only if a police officer, while in hot pursuit of a fleeing suspect, has "reasonable suspicion" that "all" its occupants are already aware of his presence—the Supreme Court has never so held. Instead, as in other Fourth Amendment cases, the Court's decisions emphasize the fact-specific balancing that determines the reasonableness of police no-knock entries. *See, e.g., Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S. Ct. 1416, 1421 (1997). Only two circuit court cases actually discuss the rights of "all occupants" in similar circumstances, and they reach conflicting conclusions. *Compare United States v. Peterson*, 353 F.3d 1045, 1049 (9th Cir. 2003) (holding that futility as to only one occupant—not even the suspect—was sufficient to dispense with the knock-and-announce requirement), with *Ingram*, 185 F.3d at 591. (rejecting a per-se "hot pursuit" exception to the knock-and-announce rule based on the Fourth Amendment interests of non-suspect occupants). Not one of the other cases cited by the panel articulates an "all occupants" rule; all those cases do is use the plural of "occupant" when describing background facts or general principles. *See, e.g., United States v. Seelig*, 498 F.2d 109, 114 (5th Cir. 1974) (two suspects were "occupants;" no discussion of "all occupants" requirement); *United States v. Dice*, 200 F.3d 978 (6th Cir. 2000) (no mention of failure to announce entry to others in a house); *Green v. Butler*, 420 F.3d 689

---

[2] To be clear, I do not assert that an officer may always make a warrantless entry of a home while in pursuit of a fleeing felon. All of the facts and circumstances must be considered. Here, however, the officer was chasing an unknown suspect who had been racing on the highway late at night, failed to heed the command for a traffic stop, and took off across an open, unlit field in his ATV, all of which actions potentially endangered Officer Wade and others. It was not clearly constitutionally unreasonable for the officer to follow the suspect through the door of the house.

(7th Cir. 2005) (no occupant, including the suspect, was aware of the police presence).

Not only does the panel opinion thus extend Fourth Amendment law by creating an "all occupants" rule, it fails to apply the rule at the level of fact-specific generality required by qualified immunity analysis for determining whether the law was "clearly established." The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. Al-Kidd*, 131 S. Ct. at 2084. The point of this part of the inquiry is to determine whether the law's application to the same or quite similar circumstances to those faced by a particular official was clear. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038-39 (1987) (using a high level of generality "destroy[s] the balance that [the] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties"). Here, the panel's recitation of knock-and-announce rulings, under the first prong of qualified immunity analysis, "revealed" that an officer must have a reasonable suspicion of futility as to all occupants before making a no-knock entry in pursuit of a fleeing suspect. This holding was the "law" that should have been "clearly established" for purposes of the second prong. Under the second prong of qualified immunity analysis, however, the panel asked only whether the "knock-and-announce rule and the justifications for dispensing with it [are] beyond debate." *Trent v. Wade*, 776 F.3d at 368, 383 (5th Cir.2015). The panel's question was posed at a significantly more general level than the rule it had just announced. As I have shown, the law was far from being clearly established at the fact-tailored level of generality.

The disconnect between the panel's Fourth Amendment ruling and the level of generality for immunity purposes mirrors the error pointed out by the Supreme Court in *Wilson v. Layne*, 526 U.S. 603, 605, 119 S. Ct. 1692, 1695

11

1999). There, the Court held that officers violated the plaintiff's rights by bringing a media crew to observe the execution of a search warrant in the plaintiffs' home. The Court also decided, however, that although prior cases and legal authorities supported its holding, this rule was not "clearly established" under the second prong of qualified immunity analysis. The Court upheld the grant of qualified immunity. *Id.* at 618 ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."). The correct level of generality, the Court held, was whether it was clearly established that the invitation to the media exceeded the scope of the search warrant.

More recently, the Court, in a per curiam opinion, overturned a denial of immunity where the circuit court held that officers should have attempted to "knock and talk" to the occupants of a home by approaching the front door rather than a side door. *Carroll v. Carman*, 135 S. Ct. 348, 352 (2014). In *Carroll*, the Supreme Court used a level of generality that matched the rule that had been applied to the officers' conduct: whether the law "clearly established that a 'knock and talk' must begin at the front door." *Id.* at 351. The Court did not, as the panel did here, apply the broadest level of generality by asking whether the warrant requirement itself was clearly established. After framing the level of generality, the Court cited lower court cases that had come to differing conclusions on this issue. Then, without deciding "whether a police officer may conduct a 'knock and talk' at any entrance that is open to visitors rather than only the front door," the Court concluded that "whether or not the constitutional rule applied by the court below was correct, it was not beyond debate." *Id.* (*quoting Stanton v. Sims*, 134 S. Ct. 3, 7 (2013) (per curiam)) (internal quotations and citations omitted). The denial of qualified immunity was therefore erroneous.

The panel here has its own vision of what the Fourth Amendment demands, and even though novel, it is not necessarily a flawed vision. But in deciding to "let a jury decide" whether Officer Wade violated "clearly established" law, the panel, in my view, clearly erred. Can it really be said that Officer Wade was "plainly incompetent" or "knowingly violat[ing] the law," *Malley*, 475 U.S. at 341, because he failed to anticipate this panel's holding? Put otherwise, should he go to trial and perhaps pay money damages on account of the panel's new knock-or-be-sued rule? I respectfully dissent.